Dissenting Opinion to Denial of Rehearing En Banc filed May
24, 2011.



                                                                                                                            




In The

Fourteenth
Court of Appeals



NO. 14-08-00074-CR



David Mark Temple, Appellant

V.

The State of Texas, Appellee



On Appeal from
the 178th District Court

Harris
County, Texas

Trial Court
Cause No. 1008763



DISSENTING OPINION TO DENIAL 

OF REHEARING EN BANC

 

While this case was pending, a plurality of the Court
of Criminal Appeals issued Brooks v. State and abolished factual-sufficiency
review in derogation of the Texas constitutional and statutory right to
appellate review of questions of fact in criminal cases.   323 S.W.3d 893,
894–912 (Tex. Crim. App. 2010) (Hervey, J., joined by Keller, Keasler, &
Cochran, JJ., plurality op.) & id. at 913–26 (Cochran, J., joined by
Womack, J., concurring); see also Tex. Const. art. V, § 6(a).   In fact,
the Court of Criminal Appeals recently acknowledged it had abolished
factual-sufficiency review.  Howard v. State, 333 S.W.3d 137, 138 n.2
(Tex. Crim. App. 2011) (citing Brooks and commenting, “The appellant
also argues that the evidence was factually insufficient, but since the
appellant’s brief was submitted we have abolished factual-sufficiency review”). 
Accordingly, I dissent
to the majority’s decision to deny my request for en banc reconsideration of
this court’s adherence to Brooks and the concomitant disregard of
appellant’s right to seek review of his questions of fact, guaranteed by the
Texas Constitution.

JURISDICTION

Ostensibly, this court is required to follow the
dictates of vertical stare decisis by acceding to the opinions and mandates of
the Court of Criminal Appeals.  However, this court also has the duty to defend
the Texas Constitution by asserting its conclusive appellate jurisdiction over
questions of fact in criminal cases.

[T]he
decision of [Texas courts of appeals] shall be conclusive on all questions of
fact brought before them on appeal or error.  

Tex.
Const. art. V, § 6(a).  Early in Texas history, criminal defendants were
afforded the protections of appellate review of questions of fact.  The
Supreme Court of the Republic of Texas recognized “the defendant in a criminal
prosecution in the district court has the right of appeal to this court from
the judgment or sentence of the court below, and to have the facts as
well as the law, at his own election, opened for re-examination.”  Republic
v. Smith, Dallam 407, 410–11 (Tex. 1841) (emphasis added).  In Texas,
appellants may challenge as erroneous, a finding of fact on the ground the
jury’s verdict was against the preponderance of the evidence, i.e., the
evidence was factually insufficient.  See, e.g., Choate v. San Antonio & A.P. Ry. Co., 44 S.W. 69, 70 (Tex. 1898).  The exclusive and
conclusive jurisdiction of appellate courts was recently acknowledged by the
Texas Supreme Court: “[A] review of the evidence for factual sufficiency is a
power committed exclusively to the court[s] of appeals.”  Regal Fin.
Co. v. Tex. Star Motors, No. 08-0148 --- S.W.3d ---, 2010 WL 3277132, at *7 (Tex. Aug. 20, 2010) (emphasis
added).  

There is a plethora of authority acknowledging the
Texas constitutional imperative that intermediate courts of appeals have
conclusive jurisdiction over factual-sufficiency issues in criminal cases, but the
Brooks plurality disregarded their own precedent in derogation of that jurisdiction. 
See Laster v. State, 275 S.W.3d 512, 518–19 (Tex. Crim. App. 2009); Bigby
v. State, 892 S.W.2d 864, 872–75 & n.3 (Tex. Crim. App. 1994); Ex
parte Schuessler, 846 S.W.2d 850, 852–53 (Tex. Crim. App. 1993); Meraz
v. State, 785 S.W.2d 146, 152–54 (Tex. Crim. App. 1990); see also Brooks, 323
S.W.3d at 931 (Price, J., joined by Meyers,
Johnson, & Holcomb, JJ., dissenting) (expressing
that the plurality ignored stare decisis).  Actually, the Court of Criminal Appeals previously cautioned against
what happened in Brooks:

[I]t [is] not appropriate for this Court to create a standard of review
which is in conflict with the language of our State Constitution.

Meraz, 785 S.W.2d at 152; see also Susan
Bleil & Charles Bleil, The Court of Criminal Appeals Versus the
Constitution: The Conclusivity Question, 23 St. Mary’s L.J. 423, 424
(1991). 

The Court of Criminal Appeals further declared that
the only way to preclude a Texas court of appeals from “determin[ing] if a jury
finding is against the great weight and preponderance of the evidence,” i.e.,
determining a question of fact, is for “the people of the State of Texas to
amend the Constitution.”  Meraz, 785 S.W.2d at 152.  Subsequently, the Brooks
plurality conversely concluded: “As the Court with final appellate jurisdiction
in this State, we decide that the Jackson v. Virginia standard is the
only standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.”  Brooks, 323 S.W.3d
at 912 (plurality op.) (citation omitted).  The Brooks plurality
attempts to justify this jurisdictional incursion with the implicit suggestion that
their authority to establish standards of appellate review trumps any
jurisdictional impediment.  Id. at 911 (citing Clewis v. State,
876 S.W.2d 428, 431 (Tex. App.—Dallas 1994), vacated, 922 S.W.2d 126
(Tex. Crim. App. 1996)).  However, I respectfully submit that our superior
court has neither the jurisdiction nor constitutional authority to create or
implement a standard of review that either explicitly or implicitly abolishes a
Texan’s right to appellate review of his questions of fact as questions of
fact.

This court and all intermediate appellate courts in
Texas are presently faced with a fundamental question relative to the oath of
office for members of the judiciary: whether to “protect and defend” the right,
under the Texas Constitution, to appellate review of questions of fact as
questions of fact in criminal cases.  The question is
not rhetorical because constitutionally mandated protection is at stake.  Intermediate
appellate courts in Texas have no inherent power to ignore an express
constitutional mandate.  See Queen v. State, 842 S.W.2d 708, 711 (Tex.
App.—Houston [1st Dist.] 1992, no pet.).  Moreover, in consideration of recent
public acknowledgements that numerous Texans were actually innocent when
convicted, our courts should be vigilant to insure that Texans are afforded all
constitutional protections against erroneous conviction.  The goal of our
criminal justice system should be to convict the guilty and exonerate the
innocent.  See United States v. Nobles, 422 U.S. 225, 230 (1975).

                                    EN BANC RECONSIDERATION

This court is presented with an extraordinary
circumstance necessitating en banc review: whether to adhere to the decision of
the Court of Criminal Appeals to dictate a standard of review for factual sufficiency
that “abolishes” appellate review of questions of fact.  See Tex. R. App
P. 41.2(c) (allowing en banc review when extraordinary circumstances so
require).  En banc review is necessary because this court has already followed Brooks
in several opinions.  I separately called for en banc review to afford this
court the opportunity to reverse course and fulfill a Texan’s right to
meaningful factual-sufficiency review.  Unfortunately, a majority of my
colleagues choose to disregard this affront to the Texas Constitution.  

            In my previous concurrence with the panel opinion, I lamented
that I am constrained to follow this court’s decision to deny appellant’s
request for appellate review of questions of fact.  I declined to perform a
factual-sufficiency review, concluding that any effort in this regard would
contradict this court’s precedent.  Accordingly, for reasons outlined below, I
dissent to this court’s rejection of en banc reconsideration of the decision to
deny appellate review of appellant’s questions of fact as prescribed by Article
5, Section 6 of the Texas Constitution.  Tex.
Const. art. V, § 6(a). 

DOES THE JACKSON STANDARD FULFILL THE TEXAS
CONSTITUTIONAL GUARANTEE OF APPELLATE REVIEW FOR FACTUAL SUFFICIENCY OF THE
EVIDENCE?

In Clewis v. State, the Court of Criminal
Appeals held that in determining factual sufficiency of the evidence, an
appellate court should view “‘all the evidence without the prism of “in a light
most favorable to the prosecution,” [and set] aside the verdict only if it is
so contrary to overwhelming weight of the evidence as to be clearly wrong and
unjust.’”  922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (adopting the standard
prescribed by the court in Stone v. State, 823 S. W. 2d 375 (Tex. App.—Austin
1992, pet. ref’d, untimely filed)).  The Brooks plurality overruled Clewis,
holding that the standard of review for any challenge to sufficiency of
evidence is the Jackson v. Virginia legal-sufficiency standard in which
an appellate court considers all of the evidence in the light most favorable to
the verdict, and determines whether the jury was rationally justified in
finding guilt beyond a reasonable doubt.  Brooks, 323 S.W.3d at 895
(plurality op.). 

            Apparently, following the Court of Criminal Appeals opinion
in Brooks, a majority of this court concluded that there is an implicit
factual-sufficiency component within the standard of review for legal sufficiency
prescribed by the United States Supreme Court in Jackson v. Virginia, 443
U.S. 307, 319 (1979).  Accordingly, those members of this court must have concluded
that protections afforded criminal defendants under Article 5, Section 6 of the
Texas Constitution were not abrogated by Brooks.  In her dissent to this court’s denial of en banc review, Justice
McCally bases some of her criticism regarding the panel opinion on what she
considers to be failure to incorporate a factual-sufficiency component when
reviewing all the evidence under the Jackson standard of review for
legal sufficiency.[1]  Risking redundancy, I remind my colleagues that the Brooks
plurality adopted the unexpurgated Jackson standard of review for legal
sufficiency as the standard for reviewing all challenges to sufficiency of
evidence.  Brooks, 323 S.W.3d at 895 (plurality op.).[2]  Under Jackson, this court must totally defer
to the jury’s weight and credibility determinations.  Jackson, 443 U.S.
at 319 & n.13, 326.  Accordingly, for reasons outlined below, I strongly
disagree with the proposition that a type of factual-sufficiency review
contemplated under Clewis is subsumed under Jackson. 

First, under Jackson, the relevant question is
whether, after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt.  Id. at 319.  The jury resolves
conflicts in the testimony, weighs the evidence, and draws inferences from
basic facts to ultimate facts, and the appellate court “impinges upon ‘jury’
discretion only to the extent necessary to guarantee the fundamental protection
of due process of law.”  Id.  If the Brooks plurality implicitly
concluded that the Jackson standard for legal-sufficiency review covers
any questions of fact raised by an appellant, those members of the Court failed
to acknowledge the unique constitutional duty of Texas courts of appeals to
decide questions of fact by weighing all of the evidence.  See Tex.
Const. art. V, § 6(a).  This is true because a question of fact as described in
the factual-conclusivity clause is a “legal term of art signifying ‘questions
of weight and preponderance of evidence.’”  Cain v. State, 958 S.W.2d
404, 408 (Tex. Crim. App. 1997) (quoting Combs v. State, 643 S.W.2d 709,
715 (Tex. Crim. App. 1982)).  Conversely, as noted above, under the Jackson
standard, the appellate court completely and totally defers to the jury’s
weight and credibility determinations.  Jackson, 443 U.S. at 319 &
n.13, 326. 

Second, under Jackson, “the factfinder’s role
as weigher of the evidence is preserved through a legal conclusion that
upon judicial review all of the evidence is to be considered in the light most
favorable to the prosecution.”  Id. at 319.  The evidence is not
weighed, and a successful challenge to legal sufficiency of the evidence
results in acquittal, not a new trial.  See Tibbs v. Florida, 457 U.S.
31, 41–42 (1982).  Whether the evidence is legally sufficient under Jackson
“is of course wholly unrelated to the question of how rationally the verdict
was actually reached. . . . [T]he standard announced
today . . . does not require scrutiny of the reasoning process”
used by the fact-finder.  Jackson, 443 U.S. at 319 n.13 (emphasis
added).  Succinctly, evidence is legally insufficient where the “only proper
verdict” is acquittal.  Tibbs, 457 U.S. at 42.  

Third
and conversely, 

A reversal on [a factual-sufficiency] ground, unlike a reversal based on
[legally-]insufficient evidence, does not mean that acquittal was the only
proper verdict.  Instead, the appellate court sits as a “thirteenth juror”
and disagrees with the jury’s resolution of the conflicting testimony. This
difference of opinion no more signifies acquittal than does a disagreement
among the jurors themselves. A deadlocked jury, we consistently have
recognized, does not result in an acquittal barring retrial under the Double
Jeopardy Clause.  Similarly, an appellate court’s disagreement with the jurors’
weighing of the evidence does not require the special deference accorded
verdicts of acquittal.

A reversal based on the weight of the evidence,
moreover, can occur only after the State both has presented
[legally-]sufficient evidence to support conviction and has persuaded the jury
to convict.  The reversal simply affords the defendant a second opportunity
to seek a favorable judgment.  An appellate court’s decision to give the defendant
this second chance does not create “an unacceptably high risk that the
Government, with its superior resources, [will] wear down [the] defendant” and
obtain conviction solely through its persistence.

Id. at 42–43
(citations and footnotes omitted) (emphasis added).  Thus, the United States
Supreme Court expressly rejected the contention (accepted as true by the Brooks
plurality) that a “distinction between the weight [(factual
sufficiency)] and [legal] sufficiency of the evidence is unworkable,” noting that
“trial and appellate judges commonly distinguish between the weight [(factual
sufficiency)] and [legal] sufficiency of the evidence” and the Due Process
Clause “sets a lower limit on an appellate court’s definition of
evidentiary sufficiency.”  Id. at 44–45 (emphasis added).  Under Jackson,
the appellate court may not reweigh evidence or scrutinize the jury’s
reasoning in any way.  Jackson, 443 U.S. at 319 & n.13, 326.  

To employ such complete deference when reviewing
factual sufficiency of the evidence contravenes a Texas criminal defendant’s
constitutional right to appellate review of fact questions. Accordingly, I
strongly disagree with the conclusion by a plurality of the Court of Criminal
Appeals and a majority of my colleagues on this court that the Jackson standard
of review is sufficient to fulfill the Texas constitutional guarantee of
appellate review of questions of fact in criminal cases.  I am not alone.  In
his comprehensive concurring opinion in Ervin v. State, Justice Jennings
described what can only be denominated as jurisdictional usurpation by the
Court of Criminal Appeals.  331 S.W.3d 49, 56–70 (Tex. App.—Houston [1st Dist.]
2010, pet. ref’d) (Jennings, J., concurring).

THE CLEWIS CONUNDRUM

 

The Brooks plurality described the progression
of previous opinions dealing with appellate standards of review for sufficiency
of evidence in criminal cases.  However, our colleagues on the Court of
Criminal Appeals could not reconcile the concept of reviewing the evidence in a
neutral light, as prescribed in Tibbs, with lengthy Texas jurisprudence,
both civil and criminal, according much deference to the jury’s determinations
of weight and credibility.  The Brooks plurality referred to Lancon
v. State, 253 S.W.3d 699 (Tex. Crim. App. 2008), as the final nail in the
coffin for factual-sufficiency review.  Brooks, 323 S.W.3d at 901–02
(plurality op.); see also id. at 925–26 (Cochran, J., concurring).  The
plurality opined that requisite deference to the jury as the sole judge of a
witness’s credibility and the weight to be given testimony eliminates viewing
the evidence in a “neutral light.”  Brooks, 323 S.W.3d at 902 (plurality
op.) (overruling Clewis, 922 S.W.2d 126). 

The Brooks plurality was so focused on resolving
the analytical conundrum their court created by fashioning a standard of review
for factual sufficiency in Clewis that they failed to acknowledge the
difference between a constitutional guarantee of appellate review versus a
standard of review gleaned under the principles of stare decisis.  For example,
the plurality concluded: “We believe that these and the reasons given by the
Florida Supreme Court for abandoning its factual-sufficiency standard are good
reasons for discarding the confusing and contradictory Clewis factual-sufficiency
standard.”  Id. at 905.  The plurality failed to acknowledge the fact
that Florida does not have a similar constitutional guarantee of appellate
review for questions of fact.  The Florida Supreme Court simply exercised its
jurisdictional and state constitutional authority to change the standard of
review in order to eliminate confusion and avoid disparate results.  Tibbs
v. Florida, 397 So. 2d 1120, 1125 (Fla. 1981) (per curiam).   The Texas
Court of Criminal Appeals does not have authority to amend the Texas
Constitution.  See Meraz, 785 S.W.2d at 152, 154.

Moreover, the Brooks plurality’s stated
reasons for discarding factual-sufficiency review are unsupportable: (1)
troubling double jeopardy problems are presented because the Clewis
factual-sufficiency standard is barely distinguishable from the Jackson legal-sufficiency
standard and (2) the non-deferential standard in Clewis could violate
the right to trial by jury under the Texas Constitution.  Brooks, 323
S.W.3d at 902­–06 (plurality op.).  First, relative to double jeopardy,
a court may set aside a conviction for any unspecified reason and order a new
trial because initial jeopardy continues and the case is restored to its
position before the former trial.  See Lofton v. State, 777 S.W.2d 96,
97 (Tex. Crim. App. 1989).  The risks of double jeopardy following reversal
based on factual insufficiency were fully clarified by the United States
Supreme Court in Tibbs.  When an appellate court sits as a
“thirteenth juror” and, after weighing the evidence in a neutral light without
deference to the jury’s resolution of conflicting evidence, determines the
evidence is factually insufficient to support conviction, an acquittal has not
occurred, but a “deadlocked jury.”  Tibbs, 457 U.S. at 42.  Therefore,
there is no double jeopardy risk.  Id.  The Double Jeopardy Clause does
not prevent an appellate court from granting a convicted defendant an
opportunity to seek acquittal through a new trial.  Id.  Consequently,
it is acutely ironic that the Court of Criminal Appeals refers to the Double
Jeopardy Clause to “protect” a defendant from the new trial he desires!  The
Court might have sound reasons to overrule Clewis, but it is without
jurisdiction or authority to abolish a constitutionally protected right.  See
Meraz, 785 S.W.2d at 152.

Second, there is persistent irony relative to the Brooks
plurality’s concern that application of “a nondeferential standard could
violate the right to trial by jury under the Texas Constitution.”  Brooks,
323 S.W.3d at 905 (plurality op.).  The Brooks plurality
placed unnecessary emphasis on the statutory provisions establishing the jury as
the exclusive judge of the facts and weight to be given evidence.  Id. at
908 (citing Tex. Code Crim. Proc. Ann. arts. 36.13 (West 2007), 38.04 (West
1979); Watson v. State, 204 S.W.3d 404, 409 (Tex. Crim. App. 2006)).  Their
analytical error results from an overbroad interpretation contrary to the
statute authorizing this court to reverse a criminal conviction “as well upon
the law as upon the facts.”  See Tex. Code Crim. Proc. Ann. art. 44.25
(West 2006).  Obviously, a criminal defendant is not concerned about preserving
the jury’s guilty verdict.  On appeal, he seeks acquittal or a new trial and
will be entitled to remand for a new trial if the court of appeals concludes
that the evidence is factually insufficient.  

It is axiomatic that a
court of appeals does not substitute its judgment for that of the jury by
sustaining a challenge to a question of fact and remanding for a new trial.  Cropper
v. Caterpillar Tractor Co., 754 S.W.2d 646, 651–52 (Tex. 1988) (quoting Hopson
v. Gulf Oil Corp., 237 S.W.2d 352, 358 (Tex. 1951)).  “The fact that the
court of appeals might engage in ‘thought processes’ akin to the jury’s . . .
does not establish a violation of the right of trial by jury.”  Id. at 651.

As noted above, the United States Supreme Court cut a
broad path for state jurisdictions that provide appellate review for a
defendant’s questions of fact.  An appellate court
may weigh the evidence and act as a “thirteenth juror.”  Tibbs, 457
U.S.  at
41–42.  The Brooks plurality was troubled that this broad authority
contradicts the “appropriate deference” standard in Clewis.  However,
the United States Supreme Court recognized that state courts have the power to
fulfill their state constitutional and statutory requirements of appellate
review of questions of fact (with latitude for review of the evidence in a
neutral light much wider than prescribed under Clewis), but the Brooks
plurality chose to overrule Clewis and abolish appellate review for
factual sufficiency of the evidence!  Denial of a Texan’s state
constitutional and statutory rights to appellate review for factual
insufficiency through erroneous interpretation or application of United States
Supreme Court authority implicates due process of law protections under the
Fifth and Fourteenth amendments to the United States Constitution.  Griffin
v. Illinois, 351 U.S. 12, 18 (1956) (concluding in states which provide for
appellate review, a criminal defendant is entitled to the protections afforded
under the Due Process and Equal Protection Clauses of the United States
Constitution).  The Supreme Court subsequently opined:  “This Court has never
held that the States are required to establish avenues of appellate review, but
it is now fundamental that, once established, these avenues must be kept free
of unreasoned distinctions that can only impede open and equal
access to the courts.”  M.L.B. v. S.L.J., 519 U.S. 102, 111 (1996)
(emphasis added) (quoting Rinaldi v. Yeager, 384 U.S. 305, 310 (1966)).

Clewis represented a compromise between
long-standing deference to the jury’s verdict and a criminal defendant’s
constitutional right to appellate review of questions of fact.  The appellate
court entertained qualified deference to the jury’s assessment of the weight,
credibility, or reliability of the admittedly legally-sufficient evidence.  Brooks,
323 S.W.3d at 928 (Price, J., dissenting).  When viewing the evidence in a
neutral light, an appellate court was not required to resolve every conflict in
the evidence, or draw every inference from ambiguous evidence, in favor of the
defendant’s guilt just because a rational jury could have drawn such an
inference; the court accepted the proposition that qualified deference does not
convert factual-sufficiency review into legal-sufficiency review.  See id. at
929.  Consequently, for many years, appellate courts
concluded there is no inherent conflict in the factual-sufficiency standard of
review when an appellate court is “deferential” to the jury’s verdict while
neutrally considering and weighing all of the evidence in the record.  The Brooks
plurality concluded that the Clewis standard of review for
factual sufficiency is indistinguishable from the standard of review for legal
sufficiency prescribed in Jackson.  Brooks, 323 S.W.3d at 895,
901 (plurality op.).  Their analytical conundrum was
resolved, but they threw the baby out with the bath-water!

I respectfully submit that
each member of this court has a sworn duty to provide appellate review
responsive to David Temple’s contention that the evidence is factually
insufficient to support the jury’s verdict of guilt beyond a reasonable doubt.[3] 

FACTUAL INSUFFICIENCY

As previously mentioned in my concurring opinion, any
effort to perform a factual sufficiency review required by the Texas
Constitution would be unavailing because a majority of this court has followed Brooks
without reservation.  After another exhaustive review of the record, and in
consideration of Justice McCally’s explication of the evidence, my concern
about this court’s reticence to address the constitutional crisis created by Brooks
is heightened.  In the panel opinion, we acknowledged that the circumstantial
evidence supporting the jury’s verdict is not negligible.  After reviewing the
entire record, this is the highest attribution we could muster.  However,
constrained by the Court of Criminal Appeals’s opinion in Brooks, the
panel ultimately concluded that the evidence was sufficient under the Jackson
standard of review for legal sufficiency.   It is my considered opinion that,
after weighing all the evidence in a neutral light, a majority of this court
would likely conclude the evidence of guilt beyond a reasonable doubt is so obviously
weak as to undermine confidence in the jury’s verdict.[4]  

Response
to Justice McCally’s 

Dissent to
Denial of En Banc Review

Having expressed strong disagreement with this
court’s unwillingness to prevent erosion of the Texas constitutional right to
factual-sufficiency review, I now address Justice McCally’s concerns about the panel
opinion which I authored.  I agree with Justice McCally that this case does not
involve strong circumstantial evidence and that other cases cited by the panel
in which murder convictions were upheld involved stronger circumstantial
evidence.  

Apparently, Justice McCally’s concerns are predicated
on her interpretation of the degree of deference required after the Brooks
plurality concluded that the standard of review for factual sufficiency under Clewis
is the same standard of review adopted by the United States Supreme Court
in Jackson.  Regretfully, it appears that much of my disagreement
with Justice McCally’s interpretation of Brooks stems from the Brooks
plurality’s effort to transmogrify a Jackson standard of review for
legal sufficiency into appellate review for factual sufficiency uniquely
guaranteed by the Texas Constitution.  Referring to footnote 19 in Brooks,
Justice McCally contends there is a factual-sufficiency component in the Jackson
standard for legal sufficiency.  My colleague suggests that the “plain language
of Brooks demonstrates that, although the light in which we view the
evidence has changed, the court has not eliminated the requirement that
appellate courts review all of the evidence and, ‘albeit to a very limited
degree, to act in the capacity of a so-called “thirteenth juror”’ to perform a
factual-sufficiency review.”  J. McCally’s Dissent to En Banc Review (quoting Watson
v. State, 204 S.W.3d 404, 416–17 (Tex. Crim. App. 2006) (explaining
standard for factual-sufficiency review)).  The incongruity of this
postulate should be apparent:  How does an appellate court follow the clear
dictate of Jackson and view all of the evidence in a light most
favorable to the prosecution, but “to a very limited degree”
act as a thirteenth juror?  If an appellate court renders a judgment of
acquittal after acting as a thirteenth juror to any degree, the State would
have a valid claim that the Court did not follow the Jackson standard of
review for legal sufficiency.  However, if an appellate court reverses for
factually insufficiency and remands for a new trial after reviewing the
evidence under the Jackson standard with some degree of deference to the
jury’s findings, the appellant may have a valid double jeopardy defense.  The Supreme
Court admonished state appellate courts not to confuse these two standards of
review.  Tibbs, 457 U.S. at 43–45. 

Justice McCally posited the robbery-at-a-convenience-store
hypothetical in support of her contention that the panel majority did not
follow Jackson, and disregarded dispositional evidence.  In that
scenario, the store clerk identified A, who was convicted by a jury for robbing
the store.  A properly authenticated videotape was admitted showing B committed
the robbery.  In that instance, the jury’s finding of guilt would not be
rational, and the appellate court should reverse for legal insufficiency.  However,
that scenario is not presented in this case.  Here, there is no conclusive, exculpatory
evidence which is objectively measureable by an appellate court.  In other
words, no objectively measureable evidence conclusively negates the jury’s implicit
findings regarding disputed evidence.  The scenario here is better represented by
the proverbial twenty nuns hypothetical, in which the State’s sole witness, a
paid informant, testifies that he saw the defendant commit the crime.  Twenty
nuns testify that the defendant was with them at the time, far from the scene
of the crime.  Twenty more nuns testify that they saw the informant commit the
crime.  Under this scenario, if the defendant is convicted, he has no remedy
under Jackson because the informant’s testimony, however incredible, is
legally sufficient to support his conviction.  See Clewis, 876 S.W.2d at
444.   

Justice McCally further opines that the panel did not
properly apply the Jackson standard of review because “the panel did not
review all of the evidence” and  “the only ‘no-rational-jury’ analysis applied
by the panel in any way was not to all of the evidence, but rather to
individual pieces of evidence.”  However, this is a circumstantial evidence
case, with dozens of complimenting and competing items of evidence the jury was
required to compare and weigh.  In compliance with instructions in the Brooks
opinion, the panel invoked the well-established standard of review for legal
sufficiency that courts “view all of the evidence in the light most
favorable to the verdict to determine whether the jury was rationally
justified in finding guilt beyond a reasonable doubt.”  Temple v. State,
--- S.W.3d ---, No. 14-08-00074-CR, 2010 WL 5175018, at *3 (Tex. App.—Houston
[14th Dist.] Dec. 21, 2010, no pet. h.) (emphasis added).  As the panel
recognized, no single circumstance in this case provided a sufficient
evidentiary basis to support the verdict.  Id. at *10 (quoting Swearingen
v. State, 101 S.W.3d 89, 97 (Tex. Crim. App. 2003)).  When the panel
reviews all of these circumstances in the light most favorable to the
verdict—which, of course, means the panel must defer to the jury’s resolution of
conflicting evidence unless a rational jury could not—their weight and
consistency “‘provide[d] the girders to strengthen the evidence and support a
rational jury’s finding the elements beyond a reasonable doubt.’”  Id.
(quoting Swearingen, 101 S.W.3d at 97).

            Although all of the evidence
in the record was reviewed and considered in a light most favorable to the
prosecution, the panel did not detail all of the evidence.  The panel was not
required to provide such intricate detail in affirming the jury’s verdict. 
Before Brooks abrogated factual-sufficiency review, courts were required
to detail all relevant evidence during factual-sufficiency review only when
reversing.  See Steadman v. State, 280 S.W.3d 242, 247 (Tex.
Crim. App. 2009) (“Before reversing a conviction on the basis of factual
insufficiency, an appellate court must detail all the relevant evidence and
must explain in exactly what manner the evidence is factually insufficient.”). 
Contrarily, when courts overruled a factual-sufficiency challenge, they were
required to detail the evidence only to the extent necessary to explain why it
was factually sufficient to support the verdict.  See Scott v. State,
934 S.W.2d 396, 402 (Tex. App.—Dallas 1996, no pet.).  The rationale for
this rule is even more applicable when a court overrules a legal-sufficiency
challenge because it views the evidence, not in a neutral light, but in the
light most favorable to the jury’s verdict.  Accordingly, after an appellate
court determines and explains why the evidence is legally sufficient to support
the jury’s verdict, there is no requirement to meticulously detail all
remaining evidence and inferences.  The absence of such surplus analysis in the
panel opinion should not be misconstrued as the panel’s failure to consider all
of the evidence.

            As an example of the panel’s
failure to review all of the evidence, Justice McCally argues the panel did not
properly consider the Roberts brothers’ testimony that they heard a gunshot at 4:38 p.m., a time when appellant was undisputedly not
home.  The panel acknowledged that the Roberts brothers’ testimony supported
appellant’s defense.  Temple, 2010 WL 5175018, at *6.  However, we also recognized
that “the jury was free to disbelieve [this testimony] and rationally could
have done so because the Roberts brothers were children and no other witness
testified that a gunshot was heard that day.”  Id.  In other words,
although the jury was free to believe the Roberts brothers’ testimony, there was no requirement to do so because their statements
were not conclusively proved.  The jury
is the sole judge of the credibility and demeanor of a witness.  See Johnson
v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000) (“Unless the
available record clearly reveals a different result is appropriate, an appellate
court must defer to the jury’s determination concerning what weight to give
contradictory testimonial evidence because resolution often turns on an
evaluation of credibility and demeanor, and those jurors were in attendance
when the testimony was delivered.”); Jones v. State, 984 S.W.2d 254, 258
(Tex. Crim. App. 1998) (“[A] jury is permitted to believe or disbelieve any
part of a witness’ testimony[.]”).  In considering the cold record, we cannot discern
whether the Roberts brothers were nervous, confident, or credible. Thus, under
the Jackson standard of review, we are precluded from attributing
credence to their testimony simply because it was not directly contradicted.[5] 
Accordingly, the panel properly deferred to the jury’s implicit decision not to
believe the Roberts brothers’ testimony.[6] 


            I also disagree with Justice
McCally’s criticism that the panel reviewed the evidence in piecemeal fashion. 
The panel began its sufficiency analysis by noting the evidence conclusively established
“that someone intentionally and knowingly caused Belinda’s death.”  Temple, 2010
WL 5175018, at *4.  Thus, the panel was required to determine whether
legally-sufficient evidence supported the jury’s finding that appellant was the
killer.  Viewed in the light most
favorable to the verdict, the evidence supports the following findings and
inferences:

·       
Appellant could have been in his house when the murder occurred.[7]

·       
Someone staged the house to make it appear that it had been burglarized. 
Appellant had ample opportunity to stage a burglary while he was watching E.T.,
and Belinda was still at school. 

·       
Appellant testified that he drove directly to Home Depot after
leaving Brookshire Brothers.  The drive time between Brookshire Brothers and
Home Depot was approximately ten to fifteen minutes.  Cameras captured
appellant leaving Brookshire Brothers at 4:38 P.M. and arriving at Home Depot
at 5:14 P.M.  During this thirty-six minute window, a witness observed
appellant driving from the opposite direction a person would choose when
leaving Brookshire Brothers headed to Home Depot. Thus, the jury could have concluded
that appellant lied about his activities after leaving Brookshire Brothers. The
jury could have also rationally concluded that the thirty-six minute window afforded
appellant ample opportunity to hide a gun and bloody clothing before arriving
at Home Depot.[8] 
A finding that appellant misrepresented his activities during the afternoon
Belinda was murdered rationally supported a finding of guilt because there is
no explanation for appellant’s prevarication other than to thwart police from
discovering his activities.

·       
Appellant engaged in an extramarital affair with Heather for
several months before the murder.  He told Heather he loved her and expressed to
a friend that he was unsure if he was willing leave Belinda for Heather.  Within
a very brief period of time after Belinda was murdered, appellant resumed his
relationship with Heather, and later they were married.[9]

·       
While police were investigating the murder, appellant threatened
certain friends to “keep [their] damn mouth[s] shut” and stop talking to police
and also followed them in his car while they were driving. 

Viewed cumulatively, through the prism “in a light
most favorable to the jury’s verdict,” these facts sufficiently link appellant
to the murder to support a non-speculative finding that he was the killer
because he had motive and opportunity, his house was staged to appear
burglarized, he misrepresented his activities during the afternoon of the
murder, he quickly resumed a relationship with the woman who was the object of
an illicit affair, and he threatened friends who were speaking with the police.[10] 
Admittedly, the circumstantial evidence supporting guilt beyond a reasonable doubt
is not great, but it is also not negligible.  Accordingly, constrained by the Jackson
standard of review, the panel correctly concluded that a rational jury could have
found appellant guilty of murdering his wife beyond a reasonable doubt.[11]

Finally, I am impressed
by Justice McCally’s detailed explication
of the evidence, which I believe supports reversal for factual insufficiency. 
Accordingly, I urge my colleagues to abjure the decision to abolish
factual-sufficiency review in criminal cases.   This court did not create a
constitutional crisis relative to the decision to abolish factual-sufficiency
review; the crisis is identifiable by simply reviewing prior opinions by the
Court of Criminal Appeals, acknowledging that it is without constitutional
authority to determine whether the evidence is factually sufficient, and
admitting it does not have jurisdiction to determine questions of factual
insufficiency until or unless the Texas Constitution is amended!  See Meraz, 785 S.W.2d at
152; see also Laster, 275 S.W.3d at 518–19.  This court has a constitutional
duty not to ignore usurpation of its conclusive jurisdiction over
factual-sufficiency issues in criminal cases, and each member of this court is
under a sworn duty to defend Article 5, Section 6 of the Texas Constitution.  
Accordingly, I respectfully dissent to denial of rehearing en banc.

 

                                                                        

                                                            /s/        Charles
W. Seymore

                                                                        Justice

 

 

Publish — Tex. R. App. P. 47.2(b).

Motion
for Rehearing En Banc Denied.  Justice McCally filed a Dissenting Opinion to
the Denial of En Banc Rehearing.  Justice Seymore filed a Dissenting Opinion to
the Denial of En Banc Rehearing, in which Justice Anderson joins.  Justice
Brown filed a Concurring Opinion to the Denial of En Banc Rehearing, in which
Justice Boyce joins.  

 









            [1]
I address Justice McCally’s criticisms of the majority opinion below. 





            [2] Since the Brooks opinion, the Court of Criminal
Appeals confirmed that factual sufficiency review has been “abolished.”  Howard,
333 S.W.3d at 138 n.2.





[3] In his concurring opinion to denial of en banc
review, Justice Brown expresses concern that we would somehow defy
“hierarchical precedent” by refusing to adhere to the dictates of the Brooks
plurality.   However, we have a sworn duty to address the constitutional crisis
created by the Brooks decision.  As Justice Frankfurter succinctly
expressed:  “A timid judge, like a biased judge, is intrinsically a lawless
judge.”  Wilkerson v. McCarthy, 336 U.S. 53, 65 (1949) (Frankfurter, J.,
concurring).  The Brooks plurality did not distinguish or overrule Meraz,
in which the Court of Criminal Appeals acknowledged that it simply has no
jurisdiction to fashion a standard of review that conflicts with the Texas
Constitution. Meraz, 785 S.W.2d at 152. The Brooks
plurality did not directly address the constitutional issue which is now
squarely before this Court.  However, even if the Brooks plurality had
sufficiently addressed the constitutional issue and overruled Meraz, we
should not remain silent.  Our former colleague on the First Court of Appeals,
Justice Taft, stated my position with clarity: “Judicial restraint requires
that I be bound, but I will not be gagged.”  Windom v. State, 961 S.W.
2d 267, 270 (Tex. App.—Houston [1st Dist.] 1997) (Taft, J., concurring), rev’d,
968 S.W.2d 360 (Tex. Crim. App.  1998). 





[4] See Vodochodsky v. State, 158 S.W.3d
502, 510 (Tex. Crim. App. 2005) (acknowledging the requirement to set-aside a
verdict for factual insufficiency after viewing the evidence in a neutral light
and finding the proof of guilt is so obviously weak as to undermine confidence
in the jury’s verdict); see also W. Wendell Hall, Standards of Review
in Texas, 38 St. Mary’s L.J. 47, 265 (2006).





[5] Justice McCally also contends the panel’s analysis of
testimony from the Roberts brothers was inadequate because the panel did not
consider testimony from the Parkers who lived next-door to the Robertses that
their dogs inexplicably ‘went crazy’ near the time the Roberts brothers heard a
gunshot.  Although the Parkers’ testimony that their dog was barking during the
time the Roberts brothers heard a gunshot arguably supports the contention that
there was a shotgun blast at that time, it does not render the Roberts brothers’
testimony conclusive relative to the exact time a shotgun was fired inside
appellant’s house.  Therefore, under the Jackson standard, we cannot
conclude that the jury acted irrationally by finding the Roberts brothers not
credible on this point.





[6]Additionally, Justice McCally contends the panel
improperly applied the “rational jury” requirement by concluding “no rational jury could credit Vielma’s testimony,”
because the panel purportedly did not consider Vielma’s testimony in
conjunction with all the evidence in the record.  See Temple, 2010 WL
5175018, at *8 n.3.  While I agree rationality of a jury’s fact finding is to
be determined from all the evidence, the panel correctly concluded it would be
irrational for a jury to believe Vielma’s testimony that a dog was not inside
the Temple’s garage.  Vielma admitted she was unable to see or determine the
dog’s location within a particular area inside the garage, rendering her
testimony that a dog was inside the garage sheer speculation.  Id.





[7] In fact, as
Justice McCally notes, the jury could have rationally believed appellant and
Belinda were together inside their house for over half-an-hour after she
arrived home from school.  Thus, the jury could have rationally concluded there
was ample time for appellant to commit the shooting.  

Additionally, I agree the fact that blood spatter was confined to
the closet is odd.  Appellant’s expert opined there must have been
back-spatter because the shotgun was discharged close-range, and Belinda’s
blood was never found on appellant, his clothing, or in his vehicle.  However,
the absence of blood evidence in the house does not necessarily support
appellant’s contention that someone else committed the crime.   A rational jury
could have inferred that appellant had adequate time while Belinda was at work
to prepare for quick-cleaning of the murder scene, particularly in light of
other evidence that the actor or actors staged a burglary.  





[8] The police conducted thorough searches of Katy and
specifically the area around appellant’s parents’ house but never found a
weapon or other evidence linking appellant to the murder.  However, many of
these searches occurred days after the murder, thereby allowing the jury to
reasonably conclude appellant was afforded sufficient time to dispose of
evidence.  





[9] A rational jury could have found it shocking that a
mere month after his wife was murdered, appellant sent Valentine’s Day flowers
to the woman with whom he had been having an affair.





[10] As described by
Justice McCally, there was evidence linking the Temples’ teenage neighbor,
R.J.S., to the murder.  See Temple, 2010 WL 5175018, at *11, *33. 
However, whether the majority panel or another jury would have believed that
this evidence created reasonable doubt regarding Temple’s guilt is
superfluous—the inquiry is whether a rational jury could have disregarded this evidence. 
R.J.S. testified that he did not murder Belinda.  Because no evidence rendered
this testimony unbelievable (in fact, this testimony was supported by evidence
that none of the double-ought shells recovered from R.J.S.’s family contained
wadding matching that found near Belinda’s body), the jury was free to believe
R.J.S.  Therefore, we were mandated to defer to the jury’s implicit finding
that R.J.S. was not the killer.  See Clayton v. State, 235 S.W.3d 772
(Tex. Crim. App. 2007) (explaining that we defer to the jury’s resolution of
conflicting evidence).  





[11] Justice McCally also expresses concern about the
panel’s resolution of appellant’s Brady issue and the cumulative harm
analysis pertaining to evidentiary and jury-charge errors.  

However, we determined appellant waived his Brady
issue by failing to complain about the State’s nondisclosure of Brady
material until twenty-one days after he became aware of the nondisclosure. 
Temple, 2010 WL 5175018, at *11.  Considering the fact that the Court of
Criminal Appeals has recognized a Brady violation “must be made as soon
as the grounds for complaint is apparent or should be apparent,” appellant’s
twenty-one-day lull constitutes a clear waiver of the issue.  See Wilson v.
State, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999).  Stated differently,
appellant was not entitled to a three-week delay to determine whether the
belatedly disclosed R.J.S. evidence necessitated a trial-halting
continuance.          

Regarding the panel’s harm analysis, appellant argued in
over seventy-five issues that the trial court erroneously admitted evidence and
permitted improper closing argument.  Most of these issues were not preserved
or did not support error.  Temple, 2010 WL 5175018, at *12–30.  After
determining that roughly ten non-constitutional errors were properly preserved,
we conducted a cumulative-error harm analysis pursuant to rule 44.2(b) of the
Texas Rules of Appellate Procedure.  In light of the evidence supporting
appellant’s guilt, the immaterial nature of several of the errors, and
particularly the effect of the many unpreserved errors, we determined the
preserved errors did not have a substantial and injurious effect on the jury’s
verdict.  Id. at *37.